FILED
SUPERIOR COURT
OF GUAM

2021 JUN 24 PM 3: 25

CLERK OF COURT
BY: _____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP<br><br>OF<br><br>GLORIA SAN AGUSTIN MATEO,<br><br>An Adult. | Superior Court Case No. <u>SP0146-19</u><br><br><br>**DECISION AND ORDER RE MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT** |

This matter came before the Court on Rose Mateo Arceo's Motion for Order to Show Cause re Contempt. Rose seeks to hold Marie Taisipic and Anita Ignacio, guardians for their mother, Gloria S.A. Mateo, in contempt for failing to comply with the August 3, 2020 Stipulation and Order Resolving Guardianship Dispute. The Court held an evidentiary hearing on April 27 and May 12, 18, 21, and 26, 2021. At the hearing, the Court heard testimony from Michelle Mateo, Marie Yanga, Rose, Jessie Mateo, Marie Taisipic, Anita, and Guam Police Department Officers Richard Veluz and Franki Santos. On the last day of the hearing, the Court took the matter under advisement and ordered in the interim that if Rose, Jessie or Frankie wished to visit with Gloria, they must email Marie Taisipic or Anita at least thirty minutes before the visit.

Now having considered the testimony, arguments, and applicable laws and rules, the Court finds Anita and Marie Taisipic in contempt of Court.

## I.    <u>FINDINGS OF FACT</u>

The Court makes the following findings by a preponderance of the evidence:

1. Gloria is an elderly woman who suffers from dementia. She also recently recovered from COVID-19.

2. In August 2020, two groups of Gloria's children resolved their competing petitions to serve as guardians over her person and estates. Pursuant to the parties' stipulation, the group consisting of Rose, Jesse, and Frankie withdrew their petition and agreed that the other group consisting of Marie Taisipic and Anita would serve as co-guardians over the person and estate of Gloria.

3. The parties' Stipulation states:

   The parties agree that ARCEO and MATEOS will no longer participate in the scheduled care of the Ward and that TAISIPIC and IGNACIO shall be solely responsible for the Ward's overall care, to include supervising and overseeing all overnight visitations with the Ward, in addition to their duties and obligations imposed upon them by law as Co-guardians; The parties understand and agree that ARCEO and MATEOS will continue to have open visitation with the Ward and that each party for both sides will abide by reasonable protocol measures related to COV1D-19 as directed by the Court; The parties also agree to share visitation time with the Ward during her birthday, Thanksgiving, Christmas and New Year's holidays to he mutually agreed to by the parties, or as otherwise determined by the Court;

Stip. and Order ¶ 3 (Aug. 3, 2020). This Stipulation was approved and ordered by the Court. *Id.* at 4.

4. The Court concurrently issued an Order Appointing Guardians. The Order required Marie Taisipic and Anita to execute the following powers and duties, among others: "Give necessary consent, approval, or releases on behalf of the ward." Order Appointing Guardians (Aug. 3, 2020). Those duties were to be in conformance with the parties' Stipulation. *Id.* at 2. The Order was later amended but retained the above-referenced language. Am. Order Appointing Guardians (Aug. 6, 2020).

5. In December 2020, Anita and Marie Taisipic hired Marie Yanga as a caregiver for Gloria. By early January 2020, Marie Yanga acted as the sole hired caregiver.

a. Marie Yanga is a live-in caregiver and works from Monday morning through Saturday morning.

b. When Maria Yanga began caretaking for Gloria, Marie Taisipic and Anita discussed with her their expectations and the visitor protocol. They said that when a visitor comes, Marie Yanga should let either of them know and to have the visitor call either guardian. Visitors should also wear masks and wash or disinfect their hands.

c. During this discussion, Marie Yanga recommended that visitors should also show identification. The guardians adopted Maria Yanga's recommendation but did not inform their siblings.

6. **Visit with Rose and Danny Arceo on January 14, 2021.**

a. Rose learned from Frankie that Gloria was asking her children to visit.

b. Rose and her husband, Danny, appeared at the house and knocked on the window. Gloria recognized them from inside the house.

c. Because they had to speak through a window, Rose raised her voice to introduce herself.

d. Marie Yanga said she needed to call Marie Taisipic before allowing Rose to visit Gloria. Marie Yanga was able to reach Anita by phone. Anita allowed Rose and Danny to take Gloria out for lunch.

e. Marie Yanga did not ask Rose or Danny for identification.

f. After Gloria left with Rose and Danny, Marie Yanga informed Marie Taisipic that Rose and Danny yelled at her; acted like they wanted to fight; and demanded to enter the home, which scared her. She felt verbally attacked by and terrified of Rose. Marie Taisipic told her to take a break, but following that break, Marie

Yanga remained frightened and did not want to encounter Rose and Danny when they returned. Marie Taisipic allowed her to leave the residence.

g. After lunch, Rose and Danny brought Gloria back to the home but no one was there. They then took Gloria to Jessie's house to use the restroom while they tried to reach Anita or Marie Taisipic.

h. They were later able to reach the caregiver at the house; Rose claims she was not rude while talking to Marie Yanga.

i. They eventually dropped Gloria back home; Marie Taisipic received Gloria at the house.

j. Rose denies yelling or attacking Marie Yanga at any point.

7. **Visit with Michelle on January 18, 2021.**

a. Gloria had also called Jessie asking for a visit. Because he was preparing for military orders, Jessie asked his wife, Michelle, to check on his mother.

b. Michelle went to the house and knocked on a metal screen door. Gloria came to the window, recognized Michelle, and identified her to Marie Yanga. Gloria insisted on going outside to see Michelle.

c. Michelle heard Marie Yanga talking on the phone. Marie Yanga put the phone on speaker and placed it against the window.

d. According to Michelle, Marie Taisipic was on the speaker and asked Michelle who was in the home with her. Michelle responded that she was alone and not in the home. According to Marie Taisipic, Michelle said she was at the home to pick up and take Gloria.

e. Marie Taisipic told Michelle to leave in the next three minutes or she would call the police to report a trespass.

f. Marie Taisipic did not allow Michelle to explain why she was there, but reiterated to leave or she would call the police.

g. According to Michelle, Marie Yanga never asked Michelle to provide her identification.

h. According to Marie Taisipic, Marie Yanga was shaking and scared when she called her; however, Michelle was under the impression that the caregiver did not appear threatened by her presence.

i. Following Michelle's visit, Marie Yanga met with Anita and Marie Taisipic.

   i. She asked them to get the police involved because she did not want to be harassed again. Marie Yanga is a recent victim of assault and purse snatching, which has heightened her awareness of her safety.

   ii. Marie Taisipic and Anita decided to comply with her request because Marie Yanga is an experienced caregiver who charges a reasonable cost and has done a good job in caring for Gloria.

j. At Maria Yanga's request, Marie Taisipic called the Guam Police Department regarding a trespassing complaint.

   i. Officer Franki Santos responded to the call. She interviewed Marie Yanga, who said that a person came to the house and demanded to be let in; that Marie Yanga did not recognize this person so she called Marie Taisipic; and that Marie Taisipic said she would sort out the situation. Marie Yanga appeared alarmed and stressed.

   ii. Marie Yanga also informed Officer Santos that a similar incident occurred the prior week when Rose and Danny came to visit without coordinating with Marie Taisipic or Anita in advance.

     iii.    Marie Taisipic insisted to Officer Santos that visitors had to coordinate with her in advance of a visit.

     iv.    Officer Santos spoke with Gloria, who was alarmed and confused by her presence.

     v.    Officer Santos also spoke with Jessie and Rose. Rose told Officer Santos that Marie Taisipic and Anita never told her that she had to give advance notice of a visit.

## 8. Visit with Jesse on January 21, 2021.

a. On January 21, 2021, Jessie went to Gloria's house for a visit.

b. After he knocked on the screen door, his mother came to the door. Marie Yanga asked him who he was but did not ask for identification. Gloria asked Marie Yanga why she couldn't go outside.

c. Jessie spoke loudly because he was speaking through a door and because Gloria has hearing challenges. He denies yelling.

d. After five to ten minutes, Marie Yanga let Gloria go outside.

e. Marie Yanga had called Marie Taisipic and again was scared and shaking. She told Marie Yanga that Michelle Mateo was there and asking for her personal information. Marie Yanga asked Marie Taisipic to call the police.

f. Around fifteen minutes later, Officer Richard Veluz arrived at the house in response to a trespassing complaint initiated by Marie Taisipic. He met Marie Taisipic before arriving. Jessie was still at the residence.

g. Jessie advised that he had not given advance notice of his visit due to his understanding of "open visitation" under the Stipulation.

h. No official police complaint was filed. Officer Veluz failed to indicate if Jessie's conduct constituted criminal trespass.

i. Officer Veluz advised Jessie and Marie Taisipic to speak to their attorneys.

## 9. Visit with Jesse and his family on February 4, 2021.

a. Prior to a military deployment, Jessie tried to visit Gloria.

b. He arrived at the house and knocked on the screen door. Despite having seen Jessie before on January 21, 2021, Maria Yanga did not allow Gloria outside for the visit. Instead, she asked him who he was.

c. Jessie was accompanied by his family. His wife Michelle told Marie Yanga that she would call Marie Yanga's workplace to report that Marie Yanga had called the police.

d. Rose arrived at the house after Jessie called her about his problems visiting his mother. She talked to her mom through the window and both she and Jessie observed her mom crying and wanting to come outside.

e. Marie Taisipic again called GPD at Maria Yanga's request.

f. GPD Officer Roy Lujan responded to the complaint. He arrived at the home followed by Marie Taisipic. Rose explained to Officer Lujan that they had paperwork that granted them visitation and an email from her attorney regarding the same.

g. Officer Lujan went inside the house and spoke to Gloria, then came outside and told Rose, Jessie, and Michelle that Gloria wanted to see them. Jessie and his family and Rose were then allowed inside the home for a visit with Gloria. While inside, Marie Taisipic enforced social distancing.

    h.  According to Rose, Gloria appeared agitated and angry and said she wished her children would stop fighting.

    i.  Jessie denies harassing Marie Yanga on this day.

10. On February 27, 2021, Marie Taisipic and Anita emailed the following to their siblings: "At the advice of our attorney Cynthia Ecube, we are sending you this email requesting some courtesy and advance notice when visiting Mom, especially with the ongoing COVID restrictions access to Mom is challenging." Ex. A. None of the addressees responded. Jessie and Rose believe the Court orders do not require the requested advance notice.

11. In the parties' Stipulation, they "agree[d] to share visitation time with the Ward during her birthday, Thanksgiving, Christmas and New Year's holidays to be mutually agreed to by the parties, or as otherwise determined by the Court." Stip. ¶ 3. For the most part, the parties have complied with the "special days" terms of the Stipulation, that is, advance notice was given.

12. Jessie testified that before the guardians were appointed, he visited often and without giving prior notice. The first time he learned the guardians required advance notice was during his visit on January 21.

13. Marie Taisipic believes that Jessie has blocked her number and deleted her from family chats, so she has difficulty reaching him by phone.

14. Marie Taisipic and Anita ask that their siblings give thirty minutes to one hour's notice before any visit with Gloria while a caregiver is present. They do not object to unannounced visits when either of them is caring for Gloria. They cite the need to get Gloria and the home ready and sanitized for visitors.

15. Jessie and Rose believe that the guardians have interfered with the agreement for open visitation. They also believe that Marie Taisipic is being untruthful about needing the advance notice to sanitize the home because she has taken Gloria to family outings where there has been no mask-wearing or social distancing. *See* Ex. 1.

## II.   LAW AND DISCUSSION

The elements of contempt are: (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful failure to comply with the order. *Lamb v. Hoffman*, 2008 Guam 2 ¶ 44. The parties do not contest that the Stipulation constitutes a valid order, that they were aware of the order, or that they had the ability to comply with the order. *See* Opp. Mot. Order to Show Cause at 3-4 (Apr. 16, 2021). Thus, the sole issue before the Court is whether the guardians willfully failed to comply with the order.

Arceo asserts that the guardians violated the Stipulation's "open visitation" provision by requiring the siblings to provide advance notice on non-special prior to visiting with Gloria. The Guardians interpret the order as permitting them to require the siblings to give advance notice prior to allowing visitation. *Id.* at 3. They argue that the Amended Order Appointing Guardians, which requires them to give consent, approval or releases on behalf of Gloria, permits them to require advance notice prior to any visitation. Furthermore, they assert that they acted in Gloria's best interests by submitting to Marie Yanga's requests to call the police whenever a visitor arrived unannounced, because Marie Yanga is a good caregiver and they wanted to keep her employed.

As an initial matter, under *Rodriguez v. Rodriguez*, the movants have the burden of proving the elements of contempt by a preponderance of the evidence. 2003 Guam 8 ¶ 18 (overturned on other grounds). The Court thus rejects the guardians' contention that the movants

must prove contempt by a standard of clear and convincing evidence. *See* Opp. Mot. Order to Show Cause at 3 (Apr. 16, 2021).

Turning to the parties' competing interpretations, the Court notes that the Stipulation here is akin to a settlement agreement because it resolved the parties' competing guardianship applications. In interpreting settlement agreements, Guam courts apply traditional contract principles. *Blas v. Cruz*, 2009 Guam 12 ¶ 11; *Camacho v. Camacho*, 1997 Guam 5 ¶¶ 30-35. Hence, "effect must be given to the mutual intention of the parties as it existed at the time of entering into the settlement agreement." *Lujan v. Lujan*, 2012 Guam 7 ¶ 30 (citing *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8). Where the settlement agreement is committed to a writing, this mutual intention of the parties should be ascertained from the writing alone. *Id.* To analyze a writing, Guam courts "begin by looking at the plain meaning . . . in order to determine whether ambiguity exists." *Hart v. Hart*, 2008 Guam 11 ¶ 20.

The parties' agreement with respect to visitation is two-fold. First, they agree that Rose, Jessie and Frankie "will continue to have open visitation with the Ward and that each party for both sides will abide by reasonable protocol measures related to COVID-19." Stip. ¶ 3. That provision is followed by the statement that "The parties also agree to share visitation with the Ward during her birthday, Thanksgiving, Christmas and New Year's holidays to be mutually agreed to by the parties, or as otherwise determined by the Court." Stip. ¶ 3. Based on the plain language of the agreement, mutual agreement was needed as to selected days and holidays, but no mutual agreement was needed for other visitation times. Instead, on non-special days, the parties agreed to "open" visitation with the sole condition that they abide by reasonable protocol measures related to COVID-19.

Defined in plain terms, "open" means "not limited." *Open,* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/open (last visited June 24, 2021).

Additionally, the Court takes judicial notice of the following protocols for visitation with older

adults, established by the Centers for Disease Control and Prevention ("CDC"):

- o Wear a mask when you interact with others.

- o Limit your in-person interactions with other people as much as possible,
  particularly when indoors.

- o Keep space between yourself and others (stay 6 feet away, which is about 2 arm
  lengths).

- o Wash your hands often. If soap and water are not readily available, use a hand
  sanitizer that contains at least 60% alcohol.

- o Avoid touching your eyes, nose, and mouth with unwashed hands.

- o Cover coughs and sneezes with a tissue or the inside of your elbow. Then wash
  your hands.

- o Clean and disinfect surfaces and things you touch often.[1]

Based on the Stipulation's limitation on "special days," the plain meaning of "open," and the

CDC's recommendation, the Court interprets "open visitation" to mean unlimited as long as the

visiting siblings follow the CDC's COVID-19 recommendations.

Here, Marie Taisipic and Anita did not afford their siblings open visitation when they

insisted that advance notification be provided for the visits. It is incumbent upon the guardians

to inform their agents (i.e., Gloria's caretakers) of the names of persons who have open visitation

rights with Gloria. The Court agrees with the guardians that it is reasonable for a caretaker to

inquire about persons who appear for visits. In the January 14 incident, for example, that

occurred with Rose and Danny in which the caretaker asked them who they were. But it was not

necessary for the caretaker to verify with the guardians that the visit was approved. While the

caretaker may have needed the guardians' approval as part of her job duties, the siblings did not

need the guardians' approval.

---

[1] CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/
need-extra-precautions/older-adults.html (Jun. 9, 2021).

Moreover, the Court does not interpret the provision that the siblings abide by reasonable protocol measures related to COVID-19 as requiring advanced notice. Rather, the Court finds that the CDC recommendations indicate that reasonable protocols may be followed by the siblings without the involvement of the guardians. For instance, the recommendation to clean and disinfect surfaces is directed at individuals visiting the older adult--in other words, directed at the visiting family members. This does not require the guardians to prepare the house in advance of the siblings visiting Gloria.

The Court also rejects the guardians' interpretation that the language of the Amended Order Appointing Guardians that they give "necessary consent, approval, or releases on behalf of the ward" means that they could impose advance notice requirements. First, that interpretation impermissibly conflicts with the Stipulation's provision of "open visitation." The Amended Order Appointing Guardians restricted the guardians' exercise of their duties to those consistent with the parties' Stipulation. *See* Am. Order Appointing Guardians at 2. Second, the testimony demonstrated that on the four occasions at issue, once Gloria saw a family visitor, she pleaded to be let outside for a visit. In other words, the guardians' actions in limiting visitation acted contrary to Gloria's consent to the visits. Third, the issue of visitation was already settled in the Stipulation; no further "consent, approval or releases" needed to have occurred.

Moreover, the guardians further limited visitation when they reported the siblings as trespassers to the police. On three occasions, the guardians initiated contact with the Guam Police Department to report that their siblings trespassed. Again, Rose, Jessie and Frankie have open visitation rights and therefore could not be trespassers when trying to visit their mother in her home.

The Court next turns to whether the guardians willfully violated the Stipulation. In determining willfulness, the Court may consider whether a party undertakes a good faith but

incorrect interpretation of an order. *Lamb*, 2008 Guam 2 ¶ 52. A party acts in "good faith" when

they take "all reasonable steps within [their] power to comply with the court's order." *Landmark*

*Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 78 (D.D.C. 2003).

The guardians argue that their actions were justified because Marie Yanga is a good and

affordable caretaker and they wanted to keep her, so they acquiesced to her requests to get the

police involved. The Court sympathizes with Maria Yanga, whose recent experience as a crime

victim likely heightened her sensitivity to strangers. The Court also sympathizes with the

guardians' desires to keep a qualified and affordable caretaker. But calling the police when their

siblings were not trespassing and instead had the legal right to visit with their mother is not

justified. There also appeared to be less drastic measures to remedy the guardians' interpretation

of the Stipulation and the Amended Order, including giving the caretaker a list of persons who

had the right to visit Gloria. Finally, as already explained, there was no other justifiable

interpretation of the Stipulation or Amended Order that required any advance notice requirement.

In summary, the Court finds that the guardians violated the Stipulation by blocking their

siblings from having open visitation and involving the police.[2] The Court further finds that the

conduct was willful. The guardians cannot claim that they had a good faith reliance on a court

order in requiring advance notice because the Stipulation's requirement for open visitation was

plain and unambiguous, and no other order usurped the Stipulation. Having willfully violated a

valid court order, the guardians are held in contempt.

The Court now turns to the remedies for contempt. "Any person found guilty of contempt

of court pursuant to § 34102(b) is subject to the same penalties as a person found guilty of a

petty misdemeanor." 7 GCA § 34101(b); *Lamb*, 2008 Guam 2 ¶ 15. Penalties for conviction of

a petty misdemeanor include imprisonment for not more than sixty days, a fine of $500, or

---

[2] Whether or not Marie Taisipic and Anita denied open visitation by requiring the siblings to show identification is a
non-issue as the testimony revealed that Marie Yanga never required them to show identification.

"[a]ny higher amount equal to double the pecuniary gain to the offender or loss to the victim caused by the conduct constituting the offense by the offender." 9 GCA §§ 80.34(b), 80.50(e).

Rose did not specify any relief sought in either her written filings or at the hearing.[3] The Court finds that a fine for contempt is not necessary in order to encourage enforcement of its orders in this case. Instead, holding the guardians in contempt for failing to abide by the Stipulation and this Court's interpretation that the guardians must make all reasonable efforts to afford their siblings with open visitation suffices to address the violation committed in this case.

## III.  CONCLUSION AND ORDER

The Court finds by a preponderance of the evidence that Marie Taisipic and Anita Ignacio willfully violated a Court order and therefore are in contempt of Court. The Court enforces the Stipulation as written and lifts the interim advance notice requirement instituted at the conclusion of the hearing on the Motion.

SO ORDERED this 24th day of June 2021.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
ECUBE, B. Concepcion
OFb
Date 6/24/21  Time: 3:42 pm
ENEGO - GN
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Cynthia V. Ecube, Esq., Law Office of Cynthia V. Ecube, for Guardians Marie Mateo Taisipic
        and Anita Mateo Ignacio
Georgette Bello Concepcion, Esq., Brooks Concepcion Law, P.C., for Rose Mateo Arceo, Jesse
        S.A. Mateo, and Frankie S.A. Mateo

---

[3] Attorneys for both sides waived closing arguments.